## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATTHEW K. THALER, | * | |
| Plaintiff | * | |
| | * | Civil No.: 1:17-cv-01700-RDB |
| v. | * | |
| | * | |
| DONALD J. TRUMP FOR PRESIDENT, INC. | * | |
| Defendant | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant Donald J. Trump for President, Inc. (the "Campaign"), by its attorneys, FERGUSON, SCHETELICH & BALLEW, P.A., Robert L. Ferguson, Jr. and Ashley E. Mullen, submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint and requests that this Court dismiss all claims asserted against this Defendant with prejudice.

## I.      INTRODUCTION

Plaintiff Matthew K. Thaler ("Plaintiff" or "Thaler") alleges that he attended a campaign rally for then-Presidential candidate Donald J. Trump on April 20, 2016 at Stephen Decatur High School in Berlin, Maryland ("the Premises").  According to the Amended Complaint, Thaler refused the Campaign's request that he leave the Premises.  Thereafter, after the Campaign advised the Maryland State Police ("the MSP") that Plaintiff had refused to leave the Premises, the MSP determined that Plaintiff was trespassing on the Premises and removed him.  The MSP later issued Thaler a criminal citation for trespass in violation of MD. Code Ann., Crim. Law §6-403.  On May 9, 2017, Plaintiff filed a lawsuit against the Campaign and the MSP in the Circuit Court for

Baltimore County, asserting claims for: (i) Defamation, (ii) False Imprisonment & Arrest, (iii) Battery, and (iv) Civil Action for Deprivation of Rights-42 U.S.C. §1983.  On June 21, 2017, the MSP removed the case to this Court, and later, moved to dismiss all claims against it.[1]

On July 31, 2017, the Campaign timely moved to dismiss all claims made against it in the initial Complaint.[2]  As set forth in the memorandum supporting that motion, those claims are barred by the applicable statute of limitations and/or fail to state claims upon which relief can be granted.  On August 20, 2017, Plaintiff filed an Amended Complaint, which dropped the claims for Defamation and Civil Action for Deprivation of Rights-42 U.S.C. §1983, and added new claims for Breach of Contract and Detrimental Reliance.[3]  The Amended Complaint also dropped all claims against the MSP.

Plaintiff's Amended Complaint attempts to "plead around" the previously filed Motion to Dismiss and impose additional litigation expense on the Campaign.  However, the amendments are largely conclusory allegations and the new claims are no more plausible than those asserted in the original Complaint.  To the extent Plaintiff has alleged new facts, these facts still remain woefully inadequate to support the claims asserted.  Inventive pleading aside, these fundamental shortcomings of Plaintiff's claims remain:

- The Campaign was perfectly within its rights to ask Thaler to leave the campaign rally and to request the MSP remove him when he refused to do so.  Under well-established Maryland law, a ticket to a private event is revocable and does not create a contractual right or a promise that the invitee has an absolutely right to attend (or remain in attendance at) a private event.  That law does not somehow change simply because the ticket informs its holder that posters and certain types of camera equipment are not permitted at the event.  To hold otherwise would lead to absurd results directly contrary to Maryland law.

---

[1] *See* Document 10.
[2] *See* Document 21.
[3] *See* Document 26.  Plaintiff also filed a Response to the Campaign's Motion to dismiss stating that as he had filed an Amended Complaint, the motion is moot.  *See* Document 27.

- As a matter of law, the Campaign's alleged request to the MSP to remove Thaler from the Premises for trespassing was legally justified and not "knowingly false."

- The Campaign cannot be vicariously liable for the actions of the MSP, Plaintiff's conclusory assertions to the contrary. In no way can an officer of the MSP be considered an "employee" or "agent" of the Campaign. Nor is it plausible to suggest that an independent MSP officer "followed orders" allegedly made by a Campaign official.

- Plaintiff's new claim for Breach of Contract also fails for lack of consideration and definiteness, while his Detrimental Reliance claim does not meet at least two of the fundamental elements of that claim.

For these reasons, discussed more fully below, the Amended Complaint should be dismissed in its entirety, with prejudice.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must "state[ ] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations must be sufficient to establish a right to relief above the speculative level. *Id*. While the Court must take the facts in the light most favorable to Plaintiff it "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)(citations omitted). "At bottom, a plaintiff must 'nudge[ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, (2007)).

## III.     STATEMENT OF FACTS

On or before April 20, 2016, Plaintiff obtained a ticket to attend a presidential campaign rally for then-candidate Donald J. Trump to be held on April 20, 2016 at 7:00 p.m. at Stephen

Decatur High School in Berlin, Maryland.  *See* Amended Complaint ¶5 and Exhibit 1 to Complaint[4].  The ticket included the following language:

> General Information:  No posters, banners, or signs may be brought into the event.  There is no dress code.  No professional cameras with a detachable lens are permitted.  No tripods, monopods, selfie sticks, or GoPros.  ID is not required for entry.  For further questions, please email: events@donaldtrump.com.

*Id.*  Thaler contends that he "travelled a long distance and incurred substantial expenses to attend the campaign rally."  *Id.* at ¶ 9.1.  He further maintains that he "conducted himself in a reasonable, calm and prudent manner."  *Id.* at ¶9.  During the rally, the MSP received a report from the Campaign that Plaintiff refused to leave the Premises upon request, and made an independent assessment, as outlined in the citation later issued, that Plaintiff had refused to leave the rally upon request and determined that he should be removed.  *Id.* at ¶10 and Exhibit 2 to Complaint.  Plaintiff was thereafter issued a criminal citation for violating MD. Code Ann., Crim. Law §6-403.  *Id.* at ¶12 and Exhibit 2 to Complaint.  The citation clearly states that Plaintiff "remained upon the private property and premises of Donald Trump campaign (Stephen Decatur High School) after being duly notified not to do so by Trump campaign staff, the agent of the owner."  *See* Exhibit 2 to Complaint.

## IV. ARGUMENT

Plaintiff's Amended Complaint contains four counts against Defendant:  (i) Breach of Contract, (ii) False Imprisonment & Arrest, (iii) Battery, and (iv) Detrimental Reliance.  For the reasons outlined below, each one of these counts must be dismissed as a matter of law.

---

[4] Plaintiff did not attach Exhibit 1 or Exhibit 2 referenced in the Amended Complaint to the Amended Complaint.  It is apparent that these are the same exhibits that were attached to the original Complaint and for the purposes of this motion, Defendant treats them as such.

**A. Plaintiff Fails to State a Claim Upon Which Relief May be Granted for Count I: Breach of Contract**

**a.   The Ticket Issued to Plaintiff Was a Mere Revocable License**

Under Maryland law, a ticket of admission is a merely a revocable license.  *See Mee v. Hubbard*, No. CIV.A. MJG-02-1750, 2003 WL 22571715, at *8 (D. Md. Feb. 3, 2003), *aff'd*, 77 F. App'x 645 (4th Cir. 2003) (police officers had probable cause to arrest plaintiff holding ticket to attend private event hosted at a public high school in Anne Arundel County for trespass when plaintiff failed to leave the premises when requested.); *Condry v. Laurie*, 184 Md. 317, 320, 41 A.2d 66, 68 (1945) (a "license is merely a personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein"); *Rau v. Collins*, 167 Md. App. 176, 192, 891 A.2d 1175, 1184 (2006) (a license is revocable "at the pleasure of the party making it").

Here, the Campaign effectively revoked the license that permitted Plaintiff's attendance at the rally when, as outlined in MSP's citation, it asked him to leave the Premises.  *See* Exhibit 2 to Complaint.  As Thaler admits in the Amended Complaint, the Campaign requested that the MSP remove Plaintiff from the Premises after he failed to leave voluntarily.  *See* Amended Complaint ¶10.  Pursuant to MD. Code Ann., Crim. Law §6-403(b), "[a] person may not remain on private property…after having been notified by the owner or the owner's agent not to do so." Accordingly, under Plaintiff's own version of the facts, he was guilty of misdemeanor trespassing when he failed to leave the premises when requested.  MD. Code Ann., Crim. Law §6-403(c).

Plaintiff now maintains that "[t]he ticket contained provisions that rendered it more than a mere revocable license" in that it "plainly discussed conditions that would permit Trump to revoke the license, but did not state that it was revocable at will." *See* Amended Complaint ¶7.  Plaintiff further argues that even if the ticket is a revocable license, he is "aware of no case, from *any* state or federal court, where the right to revoke a license was upheld without at least some evidence of

inappropriate behavior on the part of the licensee."  *Id.* at ¶9.3, fn 2.  Both contentions are inconsistent with Maryland law.

The ticket contains the following:  a bar code, a ticket number, the event time and place, and the "General Information" section quoted above.  *See* Exhibit 1 to the Complaint.  While Plaintiff attempts to characterize the "General Information" as an exhaustive list of "conditions that would permit Trump to revoke the license," this is simply not the case.  *See* Amended Complaint ¶7.  The statement that there is "no dress code," for example, is not intended to be a reason why a ticketholder may be asked to be leave the event; it merely provides guidance on the attire for the event.

The ticket's statement that "posters, banners, or signs" and "tripods, monopods, selfie sticks or GoPros" are not permitted in no way purports to state the *only* reasons why a person could be asked to leave the event.  To argue otherwise, would be to suggest, for example, that the Campaign would be powerless to remove someone who discharged a firearm at the rally, under the notion that use of firearms was not one of the specifically enumerated conditions listed on the ticket.  Plaintiff's logic is nonsensical.[5]

Plaintiff's evidently baseless assertion that he is "aware of no case, from *any* state or federal court, where the right to revoke a license was upheld without at least some evidence of inappropriate behavior on the part of the licensee" fares no better.  *See* Amended Complaint ¶9.3, fn. 2.  *Greenfeld v. Maryland Jockey Club of Baltimore*, 190 Md. 96, 57 A.2d 335 (1948) is directly on point.  In *Greenfeld*, the plaintiff purchased admission to the Pimlico racetrack.  According to the complaint, plaintiff, "while properly demeaning himself as a spectator was, without just cause,

---

[5] Furthermore, Plaintiff's own allegations that he did not "raise his voice, use obscene language, disrupt the peace or engage in any harassing or unlawful conduct," concede that these would be other justified bases for revocation of the license and removal from the premises, although they are not listed as such on the ticket.  *See* Amended Complaint ¶9.

forcibly ejected by defendant and told not to return and that if he did return he would be denied admission" *Id.* at 99.   The plaintiff further maintained that the defendant "refused to give him any just or lawful reason for ejecting him or denying him admission and has never reported that he was guilty of any offenses . . . but asserts a right to so eject any patron at its pleasure 'without any reason whatsoever.'" *Id.* at 100.   The Court of Appeals of Maryland found that the ticket issued to the plaintiff in *Greenfield* did not create a right *in rem. Id.* at 101.   The Court further found that the operator of a race track had the power to serve only whom it pleased and was not obligated to admit all comers, reasoning that "the law confers no personal right on individuals to attend or bet at race meetings." *Id.* at 105.   The decree dismissing the plaintiff's complaint was therefore affirmed, even without any evidence of inappropriate behavior on the part of the plaintiff.

Similarly, in *Mee v. Hubbard*, the plaintiff's license to attend an event at Anne Arundel County High School was revoked when he left the premises to withdraw money from an offsite ATM, and refused to pay a second admission fee in order to re-enter, despite the presence of a stamp on his hand that indicated he had already paid when he originally entered the gymnasium. 2003 WL 22571715, at *1 (D. Md. Feb. 3, 2003), *aff'd*, 77 F. App'x 645 (4th Cir. 2003). Nonetheless, the court found that the police had good cause to arrest the plaintiff for trespassing after he refused to leave. *Id.*

Here, the Campaign exercised its right to revoke the license it had issued to Plaintiff to attend the rally.  When Plaintiff refused to leave, he was trespassing.  He had no "contractual right" to remain in attendance at the rally once he had been asked to leave.

### b.  The Ticket is Not An Enforceable Contract Because No Consideration Was Exchanged and Its Terms Were Not Definite

Even if the ticket issued to Plaintiff in this case can be considered a contract, it is not legally enforceable.   In Maryland, "[t]he formation of a contract requires mutual assent (offer and

acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (emphasis added).  These requirements were not met.

In Maryland, "contracts ordinarily require consideration to be enforceable."  *Harford Cty. v. Town of Bel Air*, 348 Md. 363, 381, 704 A.2d 421, 430 (1998)(citing *Beall v. Beall*, 291 Md. 224, 229, 434 A.2d 1015, 1018 (1981)).  "A promise becomes consideration for another promise only when it constitutes a binding obligation.  Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement."  *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 148, 835 A.2d 656, 661 (2003).  In *Cheek* the Court of Appeals found that the defendant employer's "promise" to arbitrate employment disputes was "entirely illusory" based on the fact that it "reserve[d] the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice."  *Id.* at 149.  The Court therefore went on to hold that the arbitration agreement was unenforceable for lack of consideration.  *Id.* at 161.  Here, Plaintiff does not detail any consideration that he exchanged for the ticket in question, which is not surprising since the tickets were provided free of charge.  Plaintiff's conclusory allegation that "adequate consideration existed for the promises"[6] is not sufficient.  *See Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 480 (D. Md. 2016), *reconsideration denied*, No. CV DKC 15-2502, 2016 WL 5870029 (D. Md. Oct. 7, 2016) ("Legal conclusions couched as factual allegations are insufficient… as are conclusory factual allegations devoid of any reference to actual events.")(citations omitted).

Furthermore, the ticket is not sufficiently definite in its terms to constitute a legally enforceable contract.  The face of the ticket itself makes clear that there is no clear or exhaustive

---

[6] *See* Amended Complaint ¶15.

list of conditions for which a ticketholder will be asked to leave the event.  In fact, nowhere on the ticket does it even mention that it is providing a list of reasons why a ticketholder's license to be on the premises may be revoked.  It is simply providing "General Information".  *See* Exhibit 1 to Complaint.   The ban on posters, banners, or signs, for example, may simply mean that a ticketholder would be asked to leave those items outside the facility before entering.  "For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties."  *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A.2d 354, 356 (1950).  Absent any clear "purpose and intention" reflected on the ticket, the Court simply cannot treat the ticket as a legally enforceable contract, by which Plaintiff had a "contractual right" to remain at the rally.  *See also Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *37 (D. Md. Aug. 1, 2014) (dismissing plaintiff's breach of contract claim when plaintiff failed to identify any definite terms that defendants breached).

### c. The Campaign Did Not Breach Any Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that "as with any contract, the license carried with it the implied duty of good faith and fair dealing.  Thus, implicit in the contract was a condition that [the Campaign] would treat Mr. Thaler and his other guests with respect, and avoid causing Mr. Thaler any undue stress from a disgraceful and unwarranted public indignity."  *See* Amended Complaint ¶7.3. Maryland law does recognize the implied covenant of good faith and fair dealing in negotiated contracts. [7]  *Julian v. Christopher*, 320 Md. 1, 9, 575 A.2d 735, 739 (1990).  However, "the

---

[7] Maryland does not recognize an independent cause of action for the breach of the implied contractual duty of good faith and fair dealing, however.  *See Baker v. Sun Co. (R & M)*, 985 F. Supp. 609, 610 (D. Md. 1997).

covenant of good faith and fair dealing 'does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract].' Rather, the duty 'simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182–83 (4th Cir. 2000)(quoting *Parker v. Columbia Bank*, 91 Md. App. 346, 366, 604 A.2d 521, 531 (1992)).

As discussed above, the Campaign had the right at any time to revoke Plaintiff's ticket to the rally for any reason, or for no reason at all, so long as it was not based on a discriminatory reason infringing upon his civil rights.  It did not breach an implied covenant of good faith and fair dealing when exercising this right.

**B. Plaintiff Fails to State a Claim Upon Which Relief May be Granted for Count II: False Imprisonment & Arrest and Count III: Battery**

Counts II and III seek to hold the Campaign liable for improperly "directing" and/or "caus[ing]" a police officer to remove Plaintiff from the campaign rally after he refused to leave. *See* Amended Complaint ¶¶19, 23.  Specifically, Count II, False Imprisonment & Arrest, alleges that the Campaign "directed the police officer to arrest and intentionally restrict the freedom of movement of Mr. Thaler," which the police then did "without a warrant and without any legal justification." *Id.* at ¶19.  Similarly, Count III, Battery, claims that the Campaign "intentionally caused the police officer to touch Mr. Thaler without his consent." *Id.* ¶23.

These counts fail to state a claim against the Campaign for the same two basic reasons: *First*, Plaintiff does not allege any credible theory under which the Campaign could be legally responsible for the actions of the police.  *Second*, even if the Campaign were somehow vicariously liable for the actions of the police, Plaintiff has no viable underlying claim against the MSP.  This

is because the MSP, whom Plaintiff recently dismissed from the case, was legally authorized to remove criminal trespassers.

### a.   The Campaign Cannot Be Held Vicariously Liable for Actions of the Police

There has been no allegation that any Campaign official falsely imprisoned or arrested Plaintiff, or made any sort of physical contact with the Plaintiff.  The Amended Complaint makes clear that these actions were done by a MSP police officer.  *See* Amended Complaint ¶¶19, 23. Notwithstanding the Amended Complaint's allegations that the Campaign was responsible for "directing" and/or "caus[ing]"  actions of an MSP officer and that this officer "followed orders" from the Campaign, Plaintiff offers only mere conclusory allegations and identifies no plausible theory for holding the Campaign legally responsible for the acts of a MSP officer.

 "[F]undamental to the concept of vicarious liability" is that the "tortuous actor must be the servant or agent of the one sought to be held liable." *Cox v. Prince George's Cty.*, 296 Md. 162, 165, 460 A.2d 1038, 1039 (1983).  In other words, "a master-servant or principal-agent relationship must exist."  *Id.*   The Amended Complaint alleges that "[d]uring the operative period of the complaint, Trump acted through its actual or apparent agents, servants or employees, who acted within the scope of their said agency, and over whom Trump asserted actual or constructive direction, control or authority, including, but not limited to, Trump's campaign officials and *Maryland State Police officers*." *See* Amended Complaint ¶ 2. (emphasis added).  Count II alleges that it was the officer that arrested and intentionally restricted the freedom of movement of Mr. Thaler, and Count III alleges that the police officer touched Mr. Thaler without his consent.  *Id.* at ¶¶19, 23.

Plaintiff has not alleged an employer-employee relationship between the Campaign and the arresting police officer, nor has he alleged any of the "principal criteria" of an employer-employee

relationship.  These criteria include "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Lovelace v. Anderson*, 366 Md. 690, 717-18, 785 A.2d 726, 742 (2001*) (*internal citations omitted).  A private entity can only be held liable for the actions of off-duty police officers who were hired by the private entity and working within the scope of their employment. *Id.* at 720-21.  Plaintiff makes no allegations that the police officers were so hired by the Campaign.

Notably, in his initial Complaint, Plaintiff did *not* make any allegations suggesting a principal-agent relationship between the Campaign and the arresting officer.  Quite to the contrary, the initial Complaint alleged that the arresting officers were "actual or apparent agents, servants or employees" of the MSP and over whom the MSP "asserted actual or constructive direction, control or authority." *See* Complaint ¶ 3.  Now, after seeing the arguments made in the Campaign's motion to dismiss—and having dismissed MSP as a party—Plaintiff adds a conclusory allegation that the MSP officers were agents of the Campaign.  *See* Amended Complaint ¶ 2.

In determining the existence of a principal-agent relationship, three factors are relevant: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Green v. H & R Block, Inc.*, 355 Md. 488, 503, 735 A.2d 1039, 1048 (1999)(citations omitted).  Plaintiffs have alleged no facts that would suggest or support the counter-factual inference that any of these factors have been satisfied here.  It is for this reason that a federal court in Ohio rejected the "highly dubious proposition that a private entity can be held liable . . . for the actions of sworn, government police officers, acting within the scope of their official duties." *Alexander v. Haymon*, 254 F. Supp. 2d 820, 845-46 (S.D. Ohio 2003).  As the court commented, the host of a public event can

"in no manner [be] responsible for the actions of sworn police officers patrolling the grounds," as the host is "incapable, as a legal matter, of hiring and employing police officers serving in their official capacities."

### b. Plaintiff Has No Underlying Claim Against MSP For Which It Can Seek to Hold the Campaign Vicariously Liable As Its Actions Were Legally Justified

Furthermore, because the arrest and removal of Plaintiff from the rally were entirely valid and justified, Plaintiff does not have an underlying claim against MSP for which it can seek to hold the Campaign vicariously liable. *See Hines v. French*, 157 Md. App. 536, 551, 852 A.2d 1047, 1055 (2004)("False imprisonment, false arrest, and assault and battery 'can only occur when there is no legal authority or justification for the arresting officer's actions.'")(internal citations omitted). Due to the fact that Plaintiff engaged in criminal trespass, as evidenced by the face of the Amended Complaint, the MSP were legally authorized to arrest him. State law authorizes police officers to "arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer." Md. Code Ann., Crim. Proc. § 2-202. Plaintiff's criminal trespass was a misdemeanor. *Id.* § 6-403(c). The police arrested him as he "remain[ed] upon the . . . premises of [the] Donald Trump campaign . . . after being duly notified not to do so." *See* Exhibit 2 to the Complaint.  Therefore, the police were statutorily authorized to arrest Plaintiff without a warrant, and, as such, no claim for false imprisonment & arrest or battery can survive.

Plaintiff now alleges in his Amended Complaint that he was not guilty of criminal trespass because, "per the clear language of MD. Code Ann., Crim. Law §6-403(d) [criminal trespass] occurs only where the presence on the land is 'wanton.'" *See* Amended Complaint ¶10.2. Plaintiff argues that his presence on the premises was not wanton because he remained on the premises on

an actual or good faith belief that he had a contractual right to remain on the premises.  *Id.*  Plaintiff's new allegations are insufficient under Maryland law.

In *Griffin v. State*, the Court of Appeals of Maryland stated that "[w]e see no reason why the refusal of these appellants to leave the premises after having been requested to do so was not wanton in that their conduct was in 'utter disregard for the rights of others.'"  225 Md. 422, 429, 171 A.2d 717, 720 (1961)(*reversed on other grounds Griffin v. State of Md.*, 378 U.S. 130, 84 S. Ct. 1770, 12 L. Ed. 2d 754 (1964)).  The court further stated that "[e]ven though their remaining may have been no more than an aggravating incident, it was nevertheless wanton within the meaning of this criminal trespass statute."  *Id.* at 429-430.  For the same reason, once Thaler had been asked to leave the rally, his refusal to do so was wanton.

### c. The Campaign Did Not Knowingly Provide False Information to the MSP and, In Any Event, the MSP Officer Conducted an Independent Investigation Before Arresting Plaintiff

"An action for false imprisonment arises when one unlawfully causes a deprivation of another's liberty against his will.  It may also arise when one *knowingly* gives false information to a law enforcement officer which leads to another person's arrest."  *Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649, 547 A.2d 1105, 1109 (1988)(citations omitted)(emphasis in original).  However, a defendant cannot be liable for false imprisonment when "in good faith he or she provides information, however mistaken, to law enforcement officers."  *Id.* at 649-50.

As noted in the Campaign's first motion to dismiss, Plaintiff's initial "Complaint contain[ed] no allegations that the Campaign knowingly provided false information to the Maryland State Police."[8]  Predictably, Plaintiff has now added a conclusory allegation in his Amended Complaint that the Campaign "knowingly provid[ed] false information to the police

---

[8] *See* Document 21-1 at pp. 14-15.

14

officer." *See* Amended Complaint ¶¶10.4, 19.  This allegation, however, is based solely on the previous allegation that the Campaign knew that "Mr. Thaler, despite being asked to leave by Trump, nevertheless had a contractual right to remain on the premises, and was thus not trespassing", an allegation the Campaign specifically denies.  *Id.* at ¶10.1.  For the reasons discussed above, this allegation is simply wrong as a matter of law.  Thaler had no contractual right to remain on the premises after specifically being asked to leave.

Indeed, no reasonable person could believe that private political rallies lack the right to limit their attendance as they see fit by revoking tickets at their own discretion.  The right of private political association lies at the very heart of the First Amendment, and thus political campaigns have the right to exclude whomever they want.  Plaintiff, in fact, actually *acknowledges* this right, but claims that "[t]his was not a situation where Mr. Thaler infringed upon any real or imagined First Amendment right of association, because Trump gave Mr. Thaler the ticket, indicating that it wanted to associate with Mr. Thaler." *See* Amended Complaint ¶9.2.  This contention ignores the fact that the ticket was a revocable license, and could be revoked at-will by the Campaign at any time.  Just because the Campaign issued Mr. Thaler a ticket, it did not curtail its ability to determine it no longer wanted to associate with him.

Plaintiff's "false information" assertion also fails because, as evidenced by the citation, the MSP officer conducted his own independent investigation, and did not rely solely on the information from the Campaign.  In *Allen v. Bethlehem Steel Corp.*, the Court of Special Appeals of Maryland found that even if there was a genuine dispute of material fact as to whether the defendant knowingly provided false information, the Assistant State's Attorney conducted an "independent investigation" before charging, and as such, the claim failed.  76 Md. App. at 650. *See also Wood v. Palmer Ford, Inc.*, 47 Md. App. 692, 701, 425 A.2d 671, 677 (1981)(finding that

if an officer makes an independent investigation, the defendant providing the information "is not regarded as having instigated the proceeding.").

Notwithstanding Plaintiff's allegations to the contrary—again conveniently added for the first time in the Amended Complaint—the citation attached to the Complaint makes clear that the MSP officer *did* make an "independent investigation" and found that Plaintiff remained on the private property of the Campaign despite being asked not to do so.  **Pursuant to MD. Code Ann., Crim. Law §6-403(b)**, "[a] person may not remain on private property including the boat or other marine vessel of another, after having been notified by the owner or the owner's agent not to do so."  Violation of this section constitutes a misdemeanor.  **MD. Code Ann., Crim. Law §6-403(c).**  Therefore, the only relevant facts necessary for an officer to conduct his own independent investigation and to make an arrest were (1) that the Campaign asked Plaintiff to leave and (2) he refused to do so.  The criminal citation states that Thaler "remained upon the private property, and premises of Donald Trump Campaign (Stephen Decauter High School) after being duly notified not to do so by Trump Campaign staff, the agent of the owner.  *Id.*  As a matter of law, that was all that was required for the MSP to determine Plaintiff's liability for trespass.  *See* MD. Code Ann., Crim. Law §6-403(c).  "When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail." *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001)(citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

### C. Plaintiff Fails to State a Claim Upon Which Relief May be Granted For Count IV: Detrimental Reliance

In Maryland "[a] party may bring an action seeking both breach of contract and promissory estoppel, because if the court finds that the contract is unenforceable it may nonetheless provide relief based on detrimental reliance." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp.

16

3d 593, 609 (D. Md. 2015)(*quoting Wright Sols., Inc. v. Wright*, No. CIV.A. CBD-12-178, 2013 WL 1702548, at *5 (D. Md. Apr. 18, 2013).   To state a claim for detrimental reliance under Maryland law a plaintiff must show "1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce action and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996).

Plaintiff's claim fails as a matter of law under at least the first and third elements of this cause of action.  "A clear and definite promise… is one that reasonably defines the contours of the action or forbearance."  *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005).  Here, the ticket that was issued to Plaintiff does not contain any "clear and definite promise" that he could attend the campaign rally, and that once in attendance had the right to remain at the campaign rally.  It simply constituted a ticket listing the event time and place as well as a non-exhaustive list of "General Information" for the ticket holder.  The ticket certainly did not include any promise that it could only be revoked if a person brought "posters, banners, or signs," "professional cameras with a detachable lens," or "tripods, monopods, selfie sticks, or GoPros" *See* Amended Complaint ¶ 8.  As stated by the Court in *McKenzie*, "[plaintiff's] failure to meet the first element thwarts [his] ability to rely on the theory of promissory estoppel."  93 F. Supp. 2d 362, 373 (D. Md. 2005).  *See also Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 451 (D. Md.), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F. App'x 165 (4th Cir. 2013)(dismissing plaintiff's claim for detrimental reliance where there was no "clear and definite promise") and *J.G. Wentworth Originations, LLC v. Mobley*, No. 11-CV-1406, 2012 WL 4922862, at *10 (D. Md.

Oct. 12, 2012)(finding plaintiff's claim fails because there are no facts alleged to indicate defendant made "a clear and definite promise").

Plaintiff also argues that "*implicit* in the contract was a condition that Trump would treat Mr. Thaler and his other guests with respect, and avoid causing Mr. Thaler any undue stress from a disgraceful and unwarranted public indignity." *See* Amended Complaint ¶ 7.3(emphasis added). Maryland courts have squarely held that an "implied understanding or implied agreement" does not satisfy the first element of a detrimental reliance claim.  *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 484, 790 A.2d 720, 724–25 (2002).

Plaintiff also fails to meet the third element of a Detrimental Reliance claim in that it was not reasonable for Plaintiff to act in firm reliance on the ticket.  "'A party is justified in relying on another's factual assertions unless ... the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived,' in which case 'he is required to make an investigation of his own.' 'In determining if reliance is reasonable, a court is required to view the act in its setting,' and consider such factors as 'the background and experience of the party that relied upon the representation.'" *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 653–54 (D. Md. 2012)(internal citation omitted).

Any reasonable person would have known that the campaign rally could be cancelled by the Campaign at any time for political reasons, or any other reason, or that ticketholders could be excluded for any number of reasons not listed on the ticket.[9]  *See McDermott v. Nat'l Shipping Co. of Saudi Arabia*, 18 F. App'x 120, 122 (4th Cir. 2001)(finding that assuming that detrimental

---

[9] As previously outlined, Plaintiff concedes this point when he discusses other reasons that he could have been removed from the event namely "rais[ing] his voice, us[ing] obscene language, disrupt[ing] the peace or engag[ing] in any harassing or unlawful conduct.  *See* Amended Complaint ¶ 9.

reliance can constitute an exception to the at-will employment doctrine, because plaintiff's employment was at-will, he could not reasonably rely on his employer's statement of intent to employ him).  As such, Plaintiff's claim for Detrimental Reliance would fail because he could not reasonably rely on any promise made by the Campaign.

## VI.    CONCLUSION

For the reasons set forth above, Defendant Donald J. Trump for President, Inc. respectfully requests that this Court enter an Order dismissing all claims against it with prejudice, and that the Court provide any further relief as it may deem appropriate.

FERGUSON, SCHETELICH, & BALLEW, P.A.

By:    _____/s/_____
Robert L. Ferguson, Jr.
Federal Trial Bar No. 00777
Ashley E. Mullen
Federal Trial Bar No.: 18795
100 South Charles Street, Suite 1401
Baltimore, Maryland 21201
(410) 837-2200
(410) 837-1188 (facsimile)
rferguson@fsb-law.com
amullen@fsb-law.com
*Attorneys for Defendant Donald J. Trump for President, Inc.*